FERNÁNDEZ ET AL., APELANTES, v. OLIVENCIA ET AL., APELADOS.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 899.—Resuelto en abril 1, 1913.

CONTRIBUCIONES—CUMPLIMIENTO ESTRICTO DE LAS LEYES SOBRE LA MATERIA.—
Todos los preceptos esenciales de las leyes que regulan la imposición y cobro
de contribuciones deben cumplirse rigurosamente.

ID.—VENTA POR CONTRIBUCIONES—NOTIFICACIÓN A LOS ACREEDORES HIPOTECA-
RIOS.—El artículo 315 del Código Político enmendado por la ley de marzo
14 de 1907, exige que el Tesorero de Puerto Rico notifique por escrito, per-
sonalmente o por conducto de sus agentes debidamente autorizados, la venta
de toda propiedad vendida por contribuciones, a todas las personas que tuvie-
ren una hipoteca o gravamen sobre dicha propiedad.

ID.—VENTA POR CONTRIBUCIONES—NOTIFICACIÓN HECHA POR EL COMPRADOR A UN
ACREEDOR HIPOTECARIO.—La notificación por carta o verbal hecha por el
comprador de una finca vendida en pago de contribuciones al acreedor hipo-
tecario de la misma, no es válida para los efectos del artículo 315 del Código
Político enmendado por ley de marzo 14, 1907.

FRAUDE—CONFABULACIÓN—PRUEBA DEL FRAUDE.—La existencia de fraude en re-
lación con una confabulación, no es necesaria probarla como un acto indepen-
diente existente por sí solo, sino que puede ser inferido de la escritura misma,
de los actos de las partes y de las distintas circunstancias que rodean dichos
actos.

ID.—PRECIO EXCESIVAMENTE BAJO.—El precio excesivamente bajo de una venta
es una circunstancia que puede ser tomada en consideración en relación con
la existencia de fraude.

ID.—CIRCUNSTANCIAS TENDENTES A ESTABLECER EL FRAUDE.—En este caso son
circunstancias que deben considerarse como conducentes a probar la existen-
cia de fraude, la forma en que se lleva a cabo el remate, el conocimiento
que los demandados tienen de la existencia de la hipoteca y de su inscrip-
ción, el hecho de estar tasada la finca en $4,975 y haber sido vendida casi
toda en $99.30, estando gravada con una hipoteca de $16,718.74 y el paren-
tesco entre el deudor hipotecario y los compradores de la finca.

CONTRIBUCIONES—NULIDAD DE VENTA EN PAGO DE CONTRIBUCIONES—COMPRADO-
RES INCAPACITADOS.—El hijo del dueño y contribuyente moroso de una finca
rematada en pago de contribuciones, está incapacitado para rematar dicha finca
en la subasta, o para adquirirla indirectamente por conducto de un pariente
o de cualquier otra persona que la remata en el acto de la subasta.

ID.—NULIDAD DE VENTA EN PAGO DE CONTRIBUCIONES—NATURALEZA DEL CON-
TRATO.—La compra hecha por un hijo o heredero forzoso del dueño y con-
tribuyente moroso de una propiedad, directa o indirectamente, es nula, y el
comprador no adquiere título alguno sobre la propiedad, sino que equivale
dicho acto a un pago de contribuciones.

ID.—NULIDAD DE LA VENTA—AMBIGÜEDAD EN LA DESCRIPCIÓN DE LA FINCA.—
Cuando se vende en pago de contribuciones una fracción de una finca, sin
describir dicha fracción, la venta es nula por ambigüedad.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José G. Torres y José Sabater.*

Los apelados no comparecieron.

EL JUEZ ASOCIADO SR. MacLEARY, emitió la opinión del tribunal.

Hace muchos años que Zoilo Olivencia era dueño de una finca comprendiendo un cafetal, situada en el barrio de Palma Escrita del término municipal de Las Marías, denominada "Candelaria." Esta finca fué hipotecada por él a un presbítero llamado Gabriel González y la hipoteca fué donada por éste el día 2 de noviembre de 1903 a los menores demandantes en este pleito. Zoilo Olivencia falleció en febrero de 1903. Los demandados en este pleito José Euclides Olivencia y Antonio Olivencia son hijo y nieto, respectivamente, de Zoilo Olivencia. La hipoteca venció en 31 de diciembre de 1900. Las contribuciones y recargos que pesaban sobre la finca ascendieron a $99.13, siendo la misma embargada por tal motivo y vendida en 27 de octubre de 1908. Fué comprada en pública subasta por el demandado Antonio Olivencia, quien por lo menos compró 100 cuerdas de la referida finca en dicho remate. El día 4 de noviembre de 1908, el colector de rentas de aquel distrito expidió un certificado de venta al comprador. La finca no fué rescatada de dicha venta en pública subasta dentro del término de seis meses que la ley concede, haciendo inscribir Antonio Olivencia su certificado de compra en el Registro de la Propiedad de Mayagüez.

Aparece del expresado certificado de compra, según fué inscrito, que la parcela se compone en su totalidad de 130 cuerdas en vez de 116, y que solamente fueron vendidas 100 cuerdas y 30 fueron reservadas. La venta por falta de pago de contribuciones se hizo en pública subasta, a la que concurrieron varios postores. Aparece del registro que por virtud de la inscripción del certificado de venta, todos los gravámenes anteriores, incluyendo la hipoteca, habían sido cancelados. El día 4 de junio de 1909, Antonio Olivencia vendió y traspasó a

su tío José Euclides Olivencia las 100 cuerdas de terreno que había comprado anteriormente en el remate. La causa expresada en la escritura otorgada por uno de los demandados al otro, según de la mismas resulta, fué la suma de $3,000. Esta escritura también fué inscrita en Mayagüez.

Los demandantes alegan en su demanda que todas estas compras y escrituras se hicieron de acuerdo con una conspiración que existía entre los demandados para anular la hipoteca y privarles de su propiedad. Que José no pagó a Antonio ninguna cantidad, y que en realidad el primero nunca tuvo esa suma de dinero en su poder. Alegan además los demandantes que jamás se les notificó acerca del embargo trabado por falta de pago de contribuciones. ni de la venta, ya por el Tesorero, el colector de rentas o alguna otra persona autorizada para ello, no obstante el hecho de que los demandados conocían la existencia del gravamen que aparece de los autos a su favor, alegando además que los demandantes han sufrido por consiguiente, daños y perjuicios con motivo de la nulidad y cancelación de sus derechos en el registro de la propiedad sin haber tenido una oportunidad para presentar sus defensas. La demanda termina con la súplica de que el embargo y venta por falta de pago de contribuciones y la anotación de dicho embargo y la inscripción de la venta y del certificado de compra deben todos y cada uno de los mismos ser declarados nulos y de ningún valor, y que debe además declararse que el crédito hipotecario subsiste y queda en toda su fuerza y vigor, y que se condene en costas a los demandados. Los demandados formularon su contestación negando los hechos esenciales contenidos en la demanda, y alegando nuevas materias en su defensa.

El día 8 de marzo de 1912, tuvo lugar el juicio de esta causa ante la corte de distrito, compareciendo las partes y sus respectivos abogados que presentaron evidencia documental y testifical, declarando la corte por el resultado de la evidencia, probados los siguientes hechos, a saber:

I. Que los menores demandantes Fernández y Díaz adqui-

rieron un crédito hipotecario de $16,718.74 moneda provincial, por título de donación graciosa que les hiciera el presbítero Gabriel González, por escritura pública núm. 588, otorgada en Mayagüez, P. R., el día 2 de noviembre de 1903 ante el Notario Riera Palmer, que fué inscrita en 16 de diciembre de 1903 en el Registro de la Propiedad de Mayagüez a nombre de dichos menores, al folio 237, del tomo 17 de Las Marías, finca núm. 381, inscripción 10ª., pesando dicho crédito hipotecario sobre una hacienda de café llamada ''Candelaria'' con cabida de 116 cuerdas más o menos y radicada en el barrio de Palma Escrita de la Municipalidad de Las Marías, P. R., o sea la misma finca descrita en el hecho 1º. de la demanda. Que dicho crédito hipotecario fué constituído por Zoilo Olivencia y Bobé, dueño entonces de la referida finca ''Candelaria.''

II. Que la mencionada finca ''Candelaria'' fué embargada por el Colector de Rentas Internas de Las Marías, por falta de pago de las contribuciones, y sacada a pública subasta, anunciándose la misma por medio de avisos fijados en la Colecturía de Rentas Internas de Las Marías, y en uno de los periódicos de Mayagüez; y el día 27 de octubre de 1908, que fué el día señalado para la venta de la misma en pública subasta, comparecieron a dicho acto varios postores, entre los cuales estaba el demandado Antonio Olivencia a quien le fueron adjudicadas 100 cuerdas de la finca referida por la suma de $99.13, extendiéndose a su favor el oportuno certificado de venta el día 4 de noviembre de 1908, que fué inscrito en el Registro de la Propiedad de Mayagüez, en 7 de mayo de 1909, después de haber transcurrido el plazo de 150 días que, para redimir la propiedad subastada, concedía la ley vigente entonces. Que con dicha inscripción en el registro quedaron cancelados todos los gravámenes anteriores que pesaban sobre las 100 cuerdas rematadas, quedando, por tanto, anulado el gravamen de los menores demandantes.

III. Que por escritura pública otorgada en Mayagüez el día 4 de junio de 1909 ante el Notario Robustiano Biaggi, el demandado Antonio Olivencia vendió las 100 cuerdas de te-

rreno rematadas al otro demandado José Euclides Olivencia, por la suma de $3,000, que el vendedor confesó haber recibido con anterioridad al acto del otorgamiento de dicha escritura, y esta escritura de compraventa fué inscrita en el Registro de la Propiedad de Mayagüez el día 11 de junio de 1909.

IV. No aparece probado que el Tesorero de Puerto Rico o el Colector de Rentas Internas de Las Marías notificara a los demandantes o dueños del crédito hipotecario de la subasta de las 100 cuerdas de la finca "Candelaria", ni aparece tampoco probado satisfactoriamente que tal notificación no fuera hecha por el Tesorero de Puerto Rico o el colector.

V. Pero sí aparece plenamente probado a satisfacción de la corte, que José A. Fernández, padre y legal representante de los menores demandantes, fué notificado en 31 de octubre de 1908 por el demandado José E. Olivencia, del remate de la finca "Candelaria" que tuvo lugar cuatro días antes o sea en 27 de octubre de 1908.

VI. También se probó que José A. Fernández (padre de los menores demandantes) tenía otros bienes en la época del remate de la "Candelaria," que para redimir la finca rematada sólo necesitó unos $100 más o menos y que entonces (21 y 27 de octubre de 1908), el propio José A. Fernández rescató dos fincas suyas que le habían sido rematadas.

VII. También se probó que Zoilo Olivencia falleció el día 4 de febrero de 1903, en la municipalidad de Las Marías, Puerto Rico. Que cuando ocurrió el remate de la finca "Candelaria" (27 de octubre de 1908) José A. Fernández (padre de los menores demandantes) se hizo cargo de la finca, estando en dicha finca como encargado de ella y por cuenta del referido Sr. Fernández, José Euclides Olivencia. Que José E. Olivencia y Antonio Olivencia (los demandados) son hijos y nieto, respectivamente, de Zoilo Olivencia y Bobé, siendo el primero de los demandados, tío del otro demandado Antonio Olivencia. Estos son los hechos que han sido declarados probados por la corte inferior.

Dicha corte resolvió que habían dos cuestiones importan-

tes envueltas en las debida consideración de este caso, a saber:
(1) si es nulo o nó el remate de las 100 cuerdas de la finca
"Candelaria," por no haber sido notificado en la forma que
prescribe el artículo 315 del Código Político, según ha sido
enmendado por la Ley de marzo 14, 1907; y (2) si se ha pro-
bado o nó conspiración o confabulación fraudulenta por parte
de los demandados para obtener la cancelación de la hipoteca
perteneciente a los demandantes.  Ambas cuestiones fueron
resueltas por la corte sentenciadora en la negativa, requi-
riendo de esta manera, una sentencia a favor de los deman-
dados.   Sostiene el apelante que ambas cuestiones fueron
resueltas erróneamente por la corte inferior, y señala cinco
errores que se alega fueron cometidos, los que en sustancia,
son como sigue:

## I.

La corte inferior cometió error al declarar que se ha cum-
plido con los preceptos del artículo 315 del Código Político,
según ha sido enmendado por la Ley de 14 de marzo de 1907,
por el solo hecho de que el padre de los menores demandantes
haya podido tener conocimiento o aviso particular de que se
hubiera celebrado la subasta de la hacienda "Candelaria."

## II.

La corte inferior cometió error al declarar que no se ha
probado la conspiración o confabulación fraudulenta por parte
de los demandados.

## III.

La corte cometió error al no declarar que José Euclides
Olivencia estaba inhabilitado para comprar en pública su-
basta la hacienda "Candelaria" que fué de su difunto padre,
y por lo tanto, no podría comprarla al otro comprador osten-
sible, Antonio Olivencia.

## IV.

La corte cometió error al no declarar que la venta en pú-

blica subasta de parte de la hacienda "Candelaria" es nula
por ambigüedad, o falta de la debida descripción.

## V.

La corte inferior cometió error al eliminar la declaración
del testigo Juan Medina González en lo referente a la con-
ducta observada por el colector durante la subasta de la ha-
cienda "Candelaria."

Consideraremos estas cuestiones por el orden en que han
sido presentadas en el alegato escrito e informe oral de los
apelantes:

## I.

Aunque la corte inferior reconoce la validez y fuerza del
artículo 315 del Código Político, según ha sido enmendado por
la Ley de 14 de marzo de 1907, sostiene que las disposiciones
del mismo fueron cumplidas por el hecho de que el padre de
los menores demandantes pudo haber tenido conocimiento o
informes particulares del remate de la finca "Candelaria"
que había tenido lugar por virtud del embargo que se trabó
sobre la misma para el pago de contribuciones y recargos que
debía dicha finca.   Aparece claramente de los autos que tres
días después del mencionado remate, el padre de los deman-
dantes fué notificado por el demandado José Euclides Oliven-
cia que la finca había sido vendida para el cobro de contribu-
ciones en pública subasta y fué comprada por su sobrino An-
tonio Olivencia.   ¿Se ha cumplido con esto de modo suficiente
con el estatuto que regula esta materia?   El estatuto a que se
ha hecho referencia dispone que en todos los casos en que
se embargaren y vendieren bienes raíces para el pago de con-
tribuciones, el Tesorero de Puerto Rico notificará la inscrip-
ción o gravamen sobre dicha propiedad, consignando en la
notificación la fecha de la venta, la suma en que se hubiere
vendido la propiedad, y los demás hechos que estimare opor-
tunos.   Leyes de la sesión de 1907, página 340.   Siendo el
objeto de estos estatutos en relación con la venta de bienes

inmuebles por falta de pago de contribuciones, es esencial que se cumpla estrictamente con todas las disposiciones del estatuto, tanto en lo que se refiere al cumplimiento de cualesquiera condiciones anteriores o requisitos indispensables para poder ejercitar la facultad de vender y para llevar a cabo la propia venta, así como para que se cumpla con las demás condiciones posteriores a la venta. 37 Cyc., 1281, y numerosos casos que allí se citan. *Ronkendorf* v. *Taylor,* 29 U. S., (4 Pet.) 348; *Thatcher* v. *Powell,* 19 U. S. (6 Wheat.), 119; *Williams* v. *Peyton,* 17 U. S., (4 Wheat.), 75.

Se ha resuelto generalmente por las cortes de todos los Estados de la Unión Americana, que los estatutos que regulan la tasación y cobro de contribuciones deben ser estrictamente observados en todas sus disposiciones esenciales. *Kelsey* v. *Abbott,* 13 Cal., 609; *Ferris* v. *Coover,* 10 Cal., 589, y casos citados en el mismo.

De modo que el estatuto de referencia exige que el Tesorero de Puerto Rico, ya personalmente o por medio de su agente debidamente autorizado, el colector de rentas, notifique a los dueños de los gravámenes la venta por falta de pago de contribuciones, cuya notificación deberá hacerse por escrito, como puede deducirse claramente de las palabras del mismo estatuto, pues de otro modo dicha notificación no puede expresar la fecha, suma y otros hechos que el Tesorero pueda considerar oportunos, en forma eficaz. No debemos perder de vista el hecho de que la Ley de Contribuciones dispone que un embargo por atraso en el pago de las contribuciones producirá el efecto de una sentencia sobre la finca embargada. Por tanto, no podemos estar conformes con que por el mero hecho de que el comprador por virtud de la venta por falta de pago de contribuciones, o alguna otra persona que le ha comprado la finca pueda, mediante una carta dirigida al acreedor hipotecario, proporcionarle la debida notificación de que se ha efectuado una venta en pública subasta, quedando la finca sujeta a los gravámenes por virtud del embargo para satisfacer la suma de contribuciones y recargos que se deban

sobre la misma.   Tal notificación no se ajusta al estatuto y no puede ser considerada como válida u obligatoria.

## II.

Con respecto a la conspiración o confabulación fraudulenta que se alega en la demanda, fué llevada a cabo por los demandados ¿cometió error la corte sentenciadora al declarar que no se había probado dicha conspiración por parte de los demandados?   La corte en su opinión parece sostener que el fraude, si alguno existió, por parte de los demandados, debió haberse probado como un acto independiente y de modo terminante.   Cierto es que el fraude debe demostrarse mediante la debida prueba, y .que no puede deducirse o presumirse o siquiera suponerse, pues la prueba debe consistir de las circunstancias que rodean a las partes, así como sus relaciones entre sí y de la transacción en que se alega que el fraude ha sido cometido.   En otras palabras, puede llegar a la cuestión relativa al fraude adoptando el mismo procedimiento de prueba que con respecto a cualquier otro hecho en un pleito civil.   Se ha expresado por las autoridades que es difícil establecer para mostrar la intención fraudulenta de una parte contra quien se imputa una conspiración o confabulación fraudulenta.   La prueba debe considerarse conjuntamente y ser enteramente satisfactoria; o sea, deberá ser suficientemente robusta y convincente para convencer a una persona de sano criterio de la verdad de la imputación que se hace con respecto al mismo.   Dicha intención fraudulenta puede, sin embargo, deducirse de la misma escritura de compraventa, de los correspondientes actos de las diferentes partes y de todas las circunstancias que rodean y concurren en la transacción, y no deberá necesariamente ser probado como un hecho independiente.   *Bullet* v. *Worthington,* 3 Md. Ch., 99; *Zeliff* v. *Schuster,* 31 Mo., App., 493; *Vandervort* v. *Fouse,* 52 W. Va., 214, 43 S. E. Rep., 112; *Weisiger* v. *Chisholm,* 28 Tex., 780; *Bowden* v. *Bowden,* 75 Ill., 143; 20 Cyc., 799–800.

Podemos declarar, teniendo en cuenta los autos, que existen muchos indicios y circunstancias que demuestran o tienden a demostrar, que hubo un convenio entre los demandados o que por lo menos se valieron de ciertos medios para defraudar a los menores demandantes en cuanto a la hipoteca que tenían sobre la finca denominada "Candelaria"; como por ejemplo, la forma en que se llevó a cabo el remate en pública subasta, el conocimiento que tanto el tío como el sobrino tenían de la existencia de la hipoteca y su inscripción en el registro correspondiente. Todas éstas son circunstancias de naturaleza tal que tomadas en relación con otras semejantes, una persona de inteligencia corriente podría llegar a la conclusión de que se había cometido un fraude y deben ser tomadas en consideración por la corte al llegar a la conclusión con respecto a la existencia de dicho fraude. La finca "Candelaria", sobre la cual tienen los demandantes constituída la hipoteca, fué tasada para los fines del pago de contribuciones en la suma de $4,975, y Antonio Olivencia compró en el remate 100 cuerdas de la misma por la suma de $99.30. Una insuficiencia marcada de precio es una circunstancia que, a lo menos, tiende a mostrar dolo en la venta de cualquiera propiedad. La suma por la cual se constituyó la hipoteca parece haber sido la de $16,718.74, y además los autos revelan que el deudor hipotecario es el abuelo paterno de la persona que compró la finca en la venta por falta de pago de contribuciones y el padre de aquel que compró la misma al comprador por virtud de la subasta; si la venta en pública subasta hubiera sido válida y se hubiera cumplido con todos los demás requisitos de la ley, el efecto hubiera sido el de anular el crédito hipotecario perteneciente a los menores demandantes, y todas estas circunstancias tomadas en conjunto podrían muy bien ser consideradas como suficientes para que la corte estuviera justificada en llegar a la conclusión de que hubo confabulación fraudulenta o conspiración contra los derechos de los acreedores hipotecarios, según las mismas existían sobre las fincas en la época de las transacciones a que se ha hecho referencia. La resolución de la corte sentencia-

dora sobre el particular no puede declararse que ha sido correcta.

## III.

¿Cometió error la corte sentenciadora al no declarar como conclusión de derecho que el demandado José Euclides Olivencia estaba imposibilitado para comprar en el remate la hacienda "Candelaria," por el hecho de que la misma perteneció a su difunto padre, y de ser él el dueño de una participación en la misma por su cualidad de heredero forzoso, y por tal motivo no podía adquirir dicha finca de su sobrino, o sea el comprador, por virtud de la subasta, Antonio Olivencia, el otro demandado? Resulta claramente de los autos que la finca "Candelaria" pertenecía al contribuyente moroso y deudor hipotecario Zoilo Olivencia y fué inscrita a su nombre en el registro de la propiedad. Este falleció en 1903 y entre sus herederos forzosos encontramos a un hijo que es ahora el demandado José Euclides Olivencia. Después de la muerte del contribuyente, no podía ser comprador por virtud de la venta en pública subasta, puesto que estaba obligado a pagar las contribuciones y cualquier compra que pudiera hacer no sería considerada como que por ella se le traspasaba ningún título sino como un mero pago de las contribuciones que se debían. Ha quedado establecido por las autoridades el hecho de que una persona que está imposibilitada para comprar bienes inmuebles vendidos por falta de pago de contribuciones, ya debido a la relación que tiene en cuanto al título o por su obligación con el condueño, no se le permitirá adquirir un título válido sobre dicha finca, porque indirectamente procure que otra persona aparezca como comprador ostensible en dicha subasta y luego acepte una cesión del certificado o escritura de traspaso de dicha persona al ser ésta reembolsada en la cantidad que ha empleado o en alguna otra suma. *Shay* v. *McNamara,* 54 Cal., 169; *Bernal* v. *Lynch,* 36 Cal., 135; *McAlpine* v. *Sitzer,* 119 Ill., 273; *Montgomery* v. *Whitfield,* 41 La. Ann., 549; 37 Cyc., 1354. Encontramos también esta

doctrina claramente expresada en el caso de *Christy* v. *Fisher,*
58 Cal., 256, en el cual la Corte Suprema de ese Estado se
expresó como sigue:

"La persona que tiene la obligación moral o legal de pagar las
contribuciones no está en condiciones de poder ser un comprador en
la venta que se haga para el pago de las contribuciones; y si dicha
persona permite que la propiedad se venda y la compra, ya personal-
mente o indirectamente por medio de un agente, no adquiere por ello
ningún derecho o título a la propiedad, pues se considera que su
compra es un medio de pagar las contribuciones."

Aplicando la ley, según se expresó en ese caso al de autos,
resulta claro que José Euclides Olivencia estaba obligado a
pagar las contribuciones como heredero forzoso del contri-
buyente moroso y por su relación fiduciaria se encontraba
imposibilitado de poder adquirir posteriormente del compra-
dor que la obtuvo en el remate, quien es nieto del contribu-
yente moroso, la finca así adquirida.

## IV.

¿Debió la corte sentenciadora haber declarado que el re-
mate de las cien cuerdas que se tomaron de la finca Candelaria
es malo y de ningún valor por ambigüedad o falta de la debida
descripción de la misma? Vemos del certificado de venta que
fué expedido por el Colector de Rentas de Las Marías al com-
prador en la venta por falta de pago de contribuciones, que
toda la finca denominada "Candelaria" no fué vendida, sino
solamente 100 cuerdas pertenecientes a la misma; tampoco ex-
presaba dicho certificado una descripción adecuada de las 100
cuerdas que se vendieron, ni de las 30 o 16, según sea el caso,
que quedaban al contribuyente moroso aparte de aquéllas.
¿Anula la transacción este hecho de la ambigüedad o insufi-
ciencia de la descripción? Encontramos que este defecto fué
observado por el Registrador de la Propiedad de Mayagüez
aunque como subsanable en su resolución, según aparece de
la nota puesta al pie de la certificación en que se dice lo
siguiente:

"Inscrito el presente título al folio 238 vto. del tomo 17 de Las Marías, finca número 781 quintuplicado, inscripción 11ª., la cual es también de cancelación de gravámenes, habiéndose consignado en la misma como defectos subsanables, (1) el no describirse en el certificado las 100 cuerdas que se venden; y (2) el no aparecer autorizada por funcionario alguno la nota que hay en dicho certificado, según la cual quedan reservadas 30 cuerdas a favor del contribuyente moroso."

Se ha resuelto en California por la Corte Suprema de aquel Estado, que si un funcionario vende una parte de la totalidad de una finca y la misma se describe en cuanto a su cabida, pero no con respecto a su situación, la venta será considerada nula por ambigüedad. *Roberts* v. *Chan Tin Pen*, 23 Cal., 239.

Numerosas autoridades podrían citarse en apoyo de esta proposición, pero es tan clara la misma que no es necesario hacer ninguna otra referencia a ella.

## V.

El quinto señalamiento de error con respecto a la eliminación de la declaración de uno de los testigos en lo referente a los actos ejecutados por el colector durante la subasta, no es necesario que se discuta, pues el caso en conjunto se ha desarrollado principalmente en los cuatro señalamientos que ya hemos considerado.

Tomando en consideración los errores señalados que ya hemos discutido con alguna extensión, somos claramente de opinión de que la corte inferior cometió error al resolver este caso y dictar sentencia a favor de los demandados y contra los demandantes en esta acción. Por los errores que han sido indicados, la sentencia de la corte inferior debe revocarse y dictarse otra de conformidad con los principios enunciados en esta opinión.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.