FLOR, CASTA, CONCHA y FÉLIX RUIZ, demandantes y apelados, *v.* LEONOR RUIZ, demandada y apelante.

Núm. 8367.—*Sometido.:* Febrero 3, 1943. *Resuelto:* Abril 28, 1943.

824

*Diego E. Ramos*, abogado de la apelante; *Herminio Miranda*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Valentín Sánchez y Emilia Ruiz Rivera vivieron en concubinato hasta el fallecimiento de esta última. De esa relación tuvieron cinco hijos: los cuatro demandantes y la demandada. Por escritura de 26 de febrero de 1919 otorgada ante el notario Gustavo Zeno Sama, Emilia Ruiz, con su propio peculio, compró a Alberto Gandía una finca de 9.23 cuerdas radicada en el barrio Campo Alegre de Hatillo. El 6 de octubre de 1923 Emilia Ruiz suscribió y entregó un pagaré por la cantidad de $3,000, a la orden de Valentín Sánchez, a vencer el 7 de octubre de 1925, pagaré que fué autenticado por *affidavit* número 1877 ante el notario Gustavo Zeno Sama. Dicho pagaré fué endosado luego por Valentín Sánchez a José Darder. Muerta Emilia Ruiz en 1938 (*sic*) y declarados sus cinco hijos sus únicos y universales herederos por decreto de la corte inferior de fecha 9 de mayo de 1930, José Darder instó contra ellos un pleito en cobro del pagaré, y como resultado del mismo le fué adjudicada la finca en satisfacción de la sentencia. Hallándose enfermo Valentín Sánchez, decidió adquirir para sus hijos la mencionada finca. De la prueba no resulta con certeza en qué forma se celebró la transacción entre Valentín Sánchez y José Darder. Ambos murieron mucho antes de iniciarse este pleito y por consiguiente no tenemos el beneficio de sus declaraciones. Pero en una u otra forma resulta claro que Valentín Sánchez adquirió de José Darder la finca en cuestión y que por consejo del abogado Zeno Sama se convino entre Darder, Valentín Sánchez y la demandada, que Darder transmitiese el título de la finca directamente a la demandada como compradora, consignándose en la escritura que el vendedor

había recibido de la compradora con anterioridad al otorgamiento de la misma la cantidad de $1,000 en que se fijó el precio de la finca. Se convino además en presencia del notario, de Darder y del testigo Rafael Capó, que la demandada, conforme sus hermanos—entonces menores de edad—fuesen cumpliendo su mayor edad, les iría pasando a cada uno de ellos el título sobre un condominio consistente en una quinta parte de la finca, reteniendo ella el condominio restante, y la demandada así lo prometió a su padre. No obstante haberse extendido el título de compraventa a favor de la demandada, su padre continuó administrando la finca como dueño de ella, recibiendo refacción de la Central hasta su fallecimiento en 1932. Todos los hijos continuaron también viviendo en la finca como condueños. Al cumplir el mayor de ellos la edad de veintiún años, requirió a su hermana para que le hiciese entrega de su condominio. Se negó ella, indicándole que debía esperar a que todos sus hermanos fuesen mayores de edad para practicar entonces la correspondiente división. Mientras tanto la demandada continuaba al frente de la finca y recibía de la central refacción para cuatro cuerdas de cañas que tenía sembradas. Llegaron todos los hermanos a la mayor edad y la demandada rehusaba entregarles los condominios. Se valieron del Lic. Herminio Miranda, quien escribió una carta a la demandada reclamando los derechos de los demandantes. Fué entonces la demandada a consultar con el abogado Zeno Sama, como un año antes de interponerse la demanda original en este caso, aconsejándole dicho abogado que evitase el pleito con que le amenazaba el Lic. Miranda en representación de sus hermanos, cumpliendo la obligación que había contraído con su padre, contestando ella que sabía que en la finca cada uno de sus hermanos tenía una quinta parte, pero que se las pasaría cuando ella quisiera. No habiendo verificado la entrega de los condominios, sus cuatro hermanos apelados radicaron la demanda original de este caso el 11 de marzo de 1940, presentando luego, previo permiso de la corte, una demanda enmendada.

Tal fué la prueba de los demandantes, a la que la corte inferior dió entero crédito.

Debemos consignar, sin embargo, que la demandada, con su declaración y la de su suegro, trató de probar que no había existido tal convenio con su padre; que éste era insolvente y a la fecha de su fallecimiento ella lo tenía recogido en su casa porque hacía algún tiempo se hallaba enfermo; que la finca fué comprada por ella a Darder, según constaba de la escritura; que de los $1,000 importe del precio, $500 los había economizado ella criando cerdos y trabajando en costuras y los $500 restantes se los había facilitado a préstamo el padre del que entonces era su novio y con quien casó tres años después; que ese préstamo se hizo sin devengar interés alguno y no se otorgó documento que lo acreditase. El suegro ratificó lo dicho por su nuera respecto al préstamo; pero del examen de repreguntas resultó que su único capital era una finca de 10.40 cuerdas y que para reunir los $500 que entonces prestó a la novia de su hijo tuvo que vender tres vacas que poseía, las cuales le producían la leche que consumía su familia, que constaba de diez hijos.

Refiriéndose a la prueba de la demandada, dijo el juez inferior:

"La prueba que presentó en juicio para demostrar cómo adquirió esa finca, es tan poco convincente que robustece en vez de destruir la evidencia de la parte demandante, consistente en la declaración del notario Gustavo Zeno Sama y de Rafael Capó, personas que gozan en la comunidad de reconocida veracidad."

A base de la prueba así apreciada por la corte inferior se dictó la sentencia apelada, declarando que los demandantes y la demandada son dueños de la finca descrita en la demanda, en la proporción de una quinta parte indivisa para cada uno de ellos y ordenando que en el registro de la propiedad se proceda a practicar el correspondiente asiento de conformidad con dicha sentencia. No condenó la corte a la demandada al pago de los frutos reclamados por no haberse

presentado evidencia suficiente para sostener la reclamación, pero sí la condenó al pago de costas, incluyendo $100 para honorarios de abogado.

La apelante considera la transacción descrita en la demanda como si se tratase de una donación de bienes inmuebles. Es por esa razón que en apoyo de su recurso sostiene que la corte *a quo* debió haber declarado con lugar su excepción previa de insuficiencia de hechos, y que la sentencia no está sostenida por la prueba.

Arguye la apelante que tratándose de una donación de bienes inmuebles hecha por el padre a sus hijos, la donación no sólo debió constar en escritura pública, si que debió haber sido aceptada por los donatarios antes del fallecimiento del donante. El juez inferior, tratando de rebatir la teoría de la demandada, expresó en su opinión que no se trataba en este caso de una donación de bienes inmuebles, sino de bienes muebles, toda vez que Valentín Sánchez lo que en realidad hizo fué dar a sus hijos el dinero necesario para la compra de la finca.

Pero esa conclusión es contraria a la evidencia, pues nada hay en la prueba que demuestre tal entrega de dinero. De todos modos, de considerar la transacción como una donación de bienes inmuebles, el resultado sería, como señalaremos más adelante, permitir que la demandada se enriqueciese injustamente a costa de los demandantes.

Arguye también la apelante que no es aplicable la teoría del mandato, porque la supuesta encomienda hecha por el padre a la hija al efecto de que trasmitiese el título de los respectivos condominios a sus hermanos envolvía una gestión de riguroso dominio y por consiguiente el mandato debería constar en escritura pública.

Convenimos en que tampoco es aplicable a este caso la teoría del mandato; pero la ley, que no concibe un mal sin un remedio, no puede en manera alguna sancionar que la apelante, violando la confianza que en ella depositó su pa-

dre y faltando a la promesa que le hiciera—en consideración a la cual se transmitió a ella el título de la finca—, defraude a sus hermanos apropiándose de lo que para todos sus hijos por igual adquirió su padre. En efecto, el artículo 7 del Código Civil en lo pertinente prescribe que "cuando no haya ley aplicable al caso, el tribunal resolverá conforme a equidad, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del Derecho, y los usos y costumbres establecidos." De conformidad con el citado precepto legal, en el caso de *Fernández* v. *Laloma*, 56 D.P.R. 367, en que se trataba de una transacción oral en principio semejante a la de este caso, la cual, de haberse formalizado en escritura pública debidamente inscrita, hubiese constituído un fideicomiso expreso (*express trust*), dijimos:

"El caso puede ser resuelto bajo el artículo 7 del Código Civil, tomando las reglas sobre fideicomisos resultantes o tácitos de equidad y aplicándolas. En jurisdicciones en que existe la equidad surge un fideicomiso tácito en casos similares al de autos."

En el caso de *Foreman* v. *Foreman* (N. Y. 1929) 167 N. E. 428, una casa con su solar en la ciudad de Nueva York fué traspasada a Edith Foreman en enero de 1924. El precio de venta fué pagado por su esposo, el demandante. Hubo prueba tendente a demostrar que el esposo le había pedido a ella que aceptase el título a su nombre, porque él quería conservar su propiedad inmueble separada de los bienes que tenía invertidos en su negocio. También hubo prueba al efecto de que ella se comprometió a pasarle la escritura a su favor tan pronto él la requiriese para ello y a disponer de la propiedad o del producto de la misma de conformidad con los deseos de su esposo. Después de haberse otorgado la escritura de venta a la esposa, el marido cobraba las rentas y hacía uso de ellas como dueño. Pagaba las contribuciones, los premios de seguro y el costo de las mejoras y reparaciones, y constantemente ejercitaba actos de dominio sobre la

propiedad. La esposa falleció *ab intestato* en 1925, dejando como heredero a un menor, su hijo único, a quien pasó el título, sujeto al interés que la ley de Nueva York reconoce al viudo. El demandante presentó una acción para conseguir que se le traspasase el título de conformidad con el fideicomiso oral descrito. La corte de primera instancia dictó sentencia a favor del demandado por el fundamento de que el fideicomiso no podía hacerse cumplir por no·haberse formalizado por escrito.

Después de exponer estos hechos, la Corte de Apelaciones, por voz de su Juez Presidente Sr. Cardozo, al revocar la sentencia apelada, se expresó en los siguientes términos:

"La regla está bien establecida por repetidas decisiones de esta corte en el sentido de que el estatuto no impide el reconocimiento de un fideicomiso constructivo que afecte interés en tierras, cuando se abusaría de una relación confidencial si el fideicomiso declarado oralmente fuese repudiado sin reparación (Citas). De tiempo en tiempo se ha criticado esta regla en comentarios y tratados, decidiéndose que equivale a una derogación parcial de la prohibición estatutaria. Cualquier fuerza que tal crítica pueda haber tenido mientras la regla estuvo en formación. ha desaparecido con los años. Debido a una larga aquiescencia, la excepción, si lo fuere, se ha introducido por interpretación en el texto del estatuto, como si hubiere sido parte del mismo desde su principio. No es la promesa solamente, ni su incumplimiento solamente, lo que pone en acción a la corte, sino el injusto enriquecimiento prevaliéndose de la relación confidencial."

Al mismo efecto, véanse 2 *Restatement of the Law, Trust,* págs. 140 *et sec.;* 3 Bogert *on Trusts,* pág. 1596; el artículo del Profesor Costigan en 12 Mich. L. Rev. 427; *Metzger* v. *Metzger* (Pa. 1940) 129 A.L.R. 683, y las monografías en 35 A.L.R. 280, 307; 45 id. 851, 855; 66 id. 156; 80 id. 195, 206, y 129 id. 689, 695.

El hecho de que los demandantes hayan titulado su acción "reivindicación de condominios y pago de frutos" no nos impide resolver que en este caso existe un fideicomiso constructivo, resultando· como resulta que dicho remedio es perfectamente compatible con las alegaciones y la prueba.

Así lo hicimos en el caso de *Porrata* v. *Fajardo Sugar Co.*, 57 D.P.R. 628, 632, y 643, donde ni en el título de la acción ni en la súplica de la demanda se mencionaba el fideicomiso constructivo y sin embargo esta Corte, para hacer justicia entre las partes, declaró la existencia de dicho fideicomiso.

Señala la apelante como error perjudicial el permitirse a los demandantes radicar la demanda enmendada en este caso, porque según ella en esta última se varió la causa de acción expuesta en la demanda original. No hay tal variación. La causa de pedir en una y otra es la misma. En la segunda se rectifica la forma en que Darder llegó a adquirir el título sobre la finca y ese hecho aparece aceptado en la estipulación que suscribieron las partes.

Tampoco ha prescrito la acción, pues la demandante no podría adquirir por otra prescripción que no fuese la extraordinaria de treinta años, toda vez que no concurre en ella la buena fe, uno de los elementos indispensables para la existencia de la prescripción ordinaria.

*Aunque por fundamentos distintos a los expuestos por la corte inferior, procede confirmar la sentencia apelada.*