LUIS ALBERTO MESTRES, demandante, apelado y apelante, *v.* RAMÓN DÍAZ ROMÁN y RAMÓN REBOYRA, demandados, apelantes y apelados.

Núm. 8673.—*Sometido:* Abril 14, 1943. *Resuelto:* Mayo 20, 1943.

*Antonio E. Suliveras, Jr.,* y *Luis Mercader,* abogados de los apelan-
tes-apelados, respectivamente; *E. Pérez Casalduc,* abogado del
apelado-apelante.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

Luis Alberto Mestres era dueño de una finca sobre la
cual Ramón Díaz Román tenía constituída una hipoteca.
Este último radicó un procedimiento sumario en ejecución
de la referida hipoteca, obtuvo sentencia en el mismo, se le
adjudicó la propiedad en la subasta, y entró en posesión de
la misma el 14 de octubre de 1933.

Poco tiempo después Mestres radicó una acción contra
Díaz Román sobre nulidad de los procedimientos antes men-
cionados, recayendo sentencia de la corte de distrito favora-
ble al demandado el 2 de junio de 1934. En apelación esta
Corte revocó la referida sentencia el 14 de julio de 1936 (50
D.P.R. 370), devolviendo el caso a la corte de distrito para
ulteriores procedimientos. El 22 de septiembre de 1936, de
conformidad con el mandato de esta corte, la corte de dis-
trito dictó una nueva sentencia declarando nulo el procedi-
miento ejecutivo sumario mencionado; en la misma senten-
cia la corte inferior se negó a concederle honorarios de abo-
gado a Díaz Román, y otorgó a Mestres la mitad de las cos-
tas más $100 como honorarios de abogado. Resolviendo que

las únicas cuestiones que podían entonces levantarse eran las de costas y honorarios de abogado, esta corte desestimó por frívola el 29 de enero de 1937, la apelación interpuesta por Díaz Román contra esta segunda sentencia (50 D.P.R. 977).

Mientras tanto, sin embargo, ocurrieron otros incidentes. Al tomar Díaz Román posesión de la finca, no se habían pagado las contribuciones sobre la misma correspondientes a los años de 1927 al 1933. Díaz Román no pagó las referidas contribuciones sobre la propiedad para el año 1933-34 o para los años anteriores, que aún se debían. Por tanto, el 16 de octubre de 1935 la propiedad en cuestión fué vendida por la cantidad de $746.49 a Ramón Reboyra por contribuciones vencidas. Mestres fué notificado de la referida venta el 14 de febrero de 1936.

El presente caso fué iniciado el 21 de mayo de 1940 por Mestres contra Díaz Román y Reboyra, alegando que se habían combinado para despojarle de la finca en cuestión; y solicitando se le devolviese la misma bajo ciertas condiciones. Después de un juicio en los méritos, la corte de distrito dictó sentencia a favor del demandante, de la cual han apelado los demandados.

El demandante ofreció prueba oral durante el juicio tendente a demostrar que Reboyra, a quien siempre se había conocido como un simple obrero, era sobrino de Díaz Román; que, aun después que Reboyra aparentemente se había convertido en propietario en la forma aquí descrita, había trabajado desde 1939 hasta 1941 como capataz con un sueldo de $18 mensuales; que Reboyra, de igual modo que en el presente caso, había adquirido otras propiedades en ventas por contribuciones adeudadas, con dinero suministrado por Díaz Román; y que este último en diferentes ocasiones y de distinto modo, se había conducido como dueño de la finca desde que originalmente entró en posesión de la misma hasta el presente.

Aunque algunas de las declaraciones antes mencionadas fueron contradichas por los demandados, la corte de distrito les dió entero crédito. Además, el testimonio incontrovertido fué al efecto de que cuando la finca fué vendida en 1935 para responder de contribuciones adeudadas, Díaz Román tenía $43,000 en depósito en los bancos y poseía propiedades valoradas en $66,000.

Es significativo el hecho de que la venta en pública subasta por contribuciones adeudadas se efectuó después que la corte de distrito en 1934 había resuelto el pleito de nulidad a favor del demandado Díaz Román, pero mientras la apelación del mismo, que fué finalmente resuelta en 1936 en favor del demandante Mestres, estaba aun pendiente. Si las alegaciones y la prueba del demandante, a las que la corte de distrito tenía derecho a dar crédito, eran ciertas, la omisión de Díaz Román de pagar las contribuciones sobre la propiedad y la compra por él de la finca en la venta en pública subasta por contribuciones adeudadas, utilizando a su sobrino el obrero Reboyra como un maniquí en esta última transacción, evidentemente constituían una vía de escape a ser utilizada por Díaz Román en caso de una decisión adversa, como en realidad ocurrió, en el pleito instituído por Mestres para la nulidad del procedimiento ejecutivo.

La sincronización de las actuaciones mencionadas de Díaz Román fué casi perfecta. La evidencia fué al efecto de que el único capital de Mestres consistía en la finca en litigio. A virtud de las maniobras expuestas, Mestres no ha estado en posesión de la finca desde 1933 hasta el presente. Es por lo tanto fácil de comprender en qué forma le era imposible conseguir dinero para pagar en 1935 las contribuciones atrasadas.

Los demandados, sin embargo, alegan que, irrespectivamente de los mencionados hechos, Mestres fué notificado en 14 de febrero de 1936 de la venta en cobro de contribuciones adeudadas, y que el dejar él de redimir la finca dentro del

término de un año, le impide recobrar en este caso. Pero una vez más la yuxtaposición del tiempo y de los acontecimientos se combinó con el resultado práctico de privar a Mestres de su derecho de redención. Aun cuando, a pesar de hallarse privado de la posesión de la finca y de un título válido a la misma, hubiera logrado conseguir el dinero necesario para redimirla, no fué hasta después de siete meses de haber vencido dicho año que la corte de distrito, en 22 de septiembre de 1936, dictó sentencia declarándole dueño. Y todavía Díaz Román apeló frívolamente de esa sentencia, de modo que el mandato de esta corte en dicho caso no fué recibido en la corte de distrito hasta el 10 de febrero de 1937. La corte de distrito creyó, y tuvo suficiente evidencia en qué basar tal creencia, que al utilizar a Reboyra como un instrumento, Díaz Román había tratado de prolongar los procedimientos en la ejecución, así como de adquirir la finca en la venta en pública subasta, de manera que él retuviese la finca no importa cuáles fueran los resultados del litigio. La corte de distrito decidió que mantener dudosa la cuestión legal y de ese modo mantener a Mestres despojado de la finca hasta unos días antes de expirar su derecho de redención, de acuerdo con todas las circunstancias fraudulentamente le privaba, en efecto práctico, de su derecho de redención, y no hallamos razón para alterar tal conclusión.

Existen otras circunstancias que desmienten la afirmación de Díaz Román al efecto de que él había perdido toda relación con la finca una vez efectuada la venta de la misma en pública subasta a su sobrino. Mucho después de haberse efectuado dicha venta en pública subasta, Díaz Román continuaba insistiendo en su apelación frívola de la segunda sentencia dictada contra él en el procedimiento de ejecución. Y en diciembre de 1936, cuando Mestres, luchando por conseguir la posesión de su propiedad, escribió a Díaz Román ofreciéndole, en vista de la sentencia de la corte de distrito que le era favorable, pagar la hipoteca original con intere-

ses y el precio pagado en la compra en pública subasta, Díaz Román, en lugar de contestarle que él ya nada tenía que ver con el asunto, le respondió que la sentencia había sido apelada y que deseaba, antes de tomar una decisión, esperar que fuera finalmente resuelta.

Aunque teóricamente fuera del asunto, Díaz Román rehusó cumplir la segunda sentencia, la cual fué evidentemente resultado del mandato de esta corte en la primera apelación dentro del procedimiento de ejecución, e insistió en prolongar la cuestión hasta que en 29 de enero de 1937 esta corte finalmente desestimó su apelación frívola. Para esa época la corte inferior decidió, y a ello tenía derecho de acuerdo con las circunstancias, que Mestres no podía utilizar su único capital—la finca en disputa—para levantar fondos, ya para pagar la hipoteca o para redimir la propiedad antes de expirar el término de redención, lo que tuvo lugar unos días después de establecerse clara y definitivamente su título y su derecho de propiedad sobre la finca, al recibirse en la corte de distrito, el 10 de febrero de 1937, el mandato de esta corte en la segunda apelación en el procedimiento ejecutivo.

No es necesario decidir si el título adquirido por Reboyra, actuando como instrumento de Díaz Román, en la venta en pública subasta, era nulo. (Véase *Fernández et al.* v. *Olivencia et al.,* 19 D.P.R. 329.) Asumiendo, sin decidirlo, que él obtuvo un título técnicamente válido, hallamos que las circunstancias de este caso presentan un ejemplo altamente pertinente de la utilidad de la doctrina de fideicomisos constructivos (*constructive trusts*) (Véase *Flor Ruiz* v. *Ruiz,* 61 D.P.R. 823, resuelto en 28 de abril de 1943). Decidimos, por lo tanto, que Reboyra tiene título de la finca en disputa a modo de un fideicomiso constructivo en favor de Mestres, y que debe otorgar título a favor de éste, siempre que Mestres cumpla con las condiciones que mencionaremos más adelante.

El demandante en este caso apeló de aquella parte de la sentencia que le ordena pagar interés al seis por ciento so-

bre la deuda hipotecaria original desde el 22 de septiembre de 1936, fecha en que la corte de distrito dictó sentencia declarando nulo el procedimiento ejecutivo, hasta el 21 de mayo de 1940, en que se radicó la demanda en el presente caso. No hallamos error en esta conclusión; ni estamos dispuestos a acceder a la súplica del demandante al efecto de que aumentemos la cantidad que la corte de distrito, como un heho, fijó como el producto de la finca mientras el demandante estuvo privado de su posesión. Nadie ha levantado objeción alguna en cuanto a la disposición contenida en la sentencia concediendo a Díaz Román el derecho a descontar del producto de la finca las cantidades adeudadas por Mestres por concepto de contribuciones al tiempo de tomar posión Díaz Román y que fueron eliminadas mediante la venta en pública subasta, y no alteraremos ni ésa ni ninguna otra parte de la sentencia.

*La sentencia de la corte de distrito será confirmada.*