Antonio Vélez Alvarado, demandante y apelante, *v.* Juan Ramón Ramos Rodríguez, demandado y apelado.

Núm. 9021.—*Sometido:* Abril 10, 1945. *Resuelto:* Marzo 11, 1946.

*Arturo Ortiz Toro,* abogado del apelante; *L. Mercader* y *A. Muñoz Igartúa,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

En la demanda radicada en este caso se exponen dos causas de acción. En la primera se alega que el demandante es dueño en pleno dominio de una finca de 192.40 cuerdas radicada en el término municipal de Manatí, la que fué adquirida en el año 1892, por donación que le hiciera su tía doña Dolores Vélez Escobar; que el demandante ha poseído dicha finca en carácter de dueño hasta el 2 de febrero de 1943, y que desde esta fecha en adelante el demandado detenta la posesión del inmueble en contra de la voluntad del demandante, de mala fe y sin justo título. En la segunda causa de acción, después de repetir los hechos ya expuestos, se alega que el Colector de Rentas Internas de Manatí vendió en pública subasta la mencionada finca, adjudicándole la

buena pro al demandado por una suma de alrededor de $60; que al efectuar dicho remate el Colector de Rentas Internas actuó sin jurisdicción, por no haber requerido de pago de las contribuciones adeudadas al demandante, ni a ninguna otra persona, ni haber cumplido con el requisito de notificar el embargo a los vecinos y no haber llenado la forma de diligenciamiento de notificación de embargo. Se alega, además, como causa de nulidad, que durante los años 1940–1941, cuando se llevó a efecto el remate, el demandante era dueño de bienes muebles con un valor de más de $1,000, que pudieron ser y no fueron embargados por el Colector de Rentas Internas para efectuar el cobro de las contribuciones adeudadas; y, por último, que con posterioridad a la fecha del remate, al enterarse el demandante de que la finca había sido vendida, el demandante obtuvo la promesa del demandado de devolverle la finca al demandante mediante el pago de la suma pagada por el demandado, habiéndose negado el demandado a cumplir lo convenido.

Contestó el demandado, impugnando la suficiencia de los hechos alegados para constituir causa de acción, negando que el demandante tenga derecho alguno a reclamar el inmueble por no haber sido nunca dueño del mismo, habiendo pertenecido la finca objeto del pleito durante más de cuarenta años con anterioridad al remate a don Ramón Vélez Alvarado, hermano del demandante. Terminó el demandado negando específicamente todos los hechos esenciales de la demanda.

Celebrado el juicio ante la Corte de Distrito de Arecibo, ésta dictó sentencia desestimando la demanda e imponiendo las costas al demandante. Este interpuso el presente recurso y para sostenerlo señala quince errores que imputa a la corte sentenciadora. Los únicos que merecen consideración son los relacionados con la suficiencia de la prueba y con la apreciación de la misma por la corte inferior. Hagamos un resumen de la prueba.

Declaró el demandante: que tiene 73 años de edad; que la finca en litigio se la dió como regalo su tía Doña Dolores Vélez, cuando lo bautizaron; que desde entonces ha poseído la finca como dueño absoluto y nunca la poseyó como apoderado de su hermano Ramón Vélez Alvarado; que el demandado sabía que la finca era del demandante; que en el año 1940–41 el demandante era dueño de bienes, ganado, prendas y automóviles con un valor de más de $10,000; que nunca fué requerido para el pago de contribuciones sobre la finca, ni se enteró de que se estuviese subastando la finca "La Lima"; que después del remate él habló con el demandado y convino con él en pagarle lo que él había pagado en el remate, comprometiéndose el demandado a devolverle la finca. Repreguntado por la otra parte, contestó: que la finca se la regaló su tía cuando él estaba recién nacido; que él no vivía en esa finca, sino en otra que queda cerca; que no se enteró que las contribuciones no habían sido pagadas, porque había otra persona encargada de pagarlas, su hermano Ramón Vélez Alvarado; que sabía que la finca estaba a nombre de su hermano Don Ramón y que él la poseía como dueño, según los recibos de contribuciones. Contestando a su abogado, dijo: que no le constaba que "La Lima" apareciera pagando contribuciones a nombre de Ramón Vélez Alvarado; que eso no le preocupaba porque las relaciones entre él y su hermano eran buenas y le era indiferente que se pagasen a nombre de uno o de otro; que como cuestión de hecho las contribuciones se pagaban con dinero del demandante.

Declaró la Señora Coral Ramos de Vélez, esposa del demandante, corroborando en todos sus extremos y detalles lo declarado por el demandante. En relación con el remate y la alegada promesa del demandado de devolverles la finca, declaró: que cuando ella fué a la Colecturía a pagar las contribuciones, allí le informaron que Juan Ramón Ramos, el demandado, la había rematado; que ella fué a ver al demandado, y le preguntó si era cierto que él hubiese rematado

"La Lima" y él le respondió: "Bueno, pero es igual que si fuese de ustedes en cualquier momento"; que ella le dijo: "Yo no creo que usted vaya a quedarse con esta finca" y él contestó: "No se ponga nerviosa, ustedes no van a perder la finca de ninguna manera, yo no voy a quedarme con la finca, únicamente lo he hecho porque para que la remate otro la rematé yo mismo. . . . Váyase tranquila . . . ., no se ponga nerviosa, yo no soy persona mala. Dígale a Antonio que puede estar tranquilo, que en cualquier momento puede tener su finca, que no vea las contribuciones, no se preocupen por el dinero, en cualquier momento se la devuelvo"; que su esposo habló con el demandado y éste en presencia de ella le dijo a su esposo lo mismo que ya le había dicho a ella en cuanto a que estaba dispuesto a devolverles la finca; que algún tiempo después fué a ver nuevamente al demandado, diciéndole que deseaba arreglar el asunto de la finca y él volvió a decirle que no pensaba quedarse con ella; que ella fué más tarde a ofrecerle lo que él había gastado y él le dijo: "Ya veremos eso", y poco después vino la demanda de desahucio para que le entregaran la finca; que Juan Ramón Ramos sabía que la finca era de Antonio Vélez Alvarado, pues él había ido allí muchas veces a caballo y volteaba la finca con ellos y les decía que ellos podrían sacarle mayores beneficios si la cultivasen.

Virgilio Ramos Muñiz, llamado como testigo del demandante, declaró: que es hermano del demandado; que conoce la finca "La Lima" desde que era muchachito y siempre conoció como su dueño a Antonio Vélez Alvarado, que era quien la cultivaba y se aprovechaba de sus productos; que el demandado sabía "igual que yo lo sabía", que la finca era del demandante; que en el año 1940 el declarante fué arrendatario de la finca y quien se la dió en arrendamiento fué Antonio Vélez Alvarado, como dueño; que la finca vale hoy como quince mil dólares; que la poseyó como arrendatario hasta el 1942.

Fué llamado a declarar Juan Rosario Maldonado, vecino del Barrio de Coto Norte, Manatí, que es el barrio en donde radica la finca. en litigio. Su nombre aparece al pie de un impreso titulado "Notificación de embargo", fechado agosto 1, 1940 y firmado "Juan Rosario". Al serle mostrado el documento, declaró que ésa no es su firma; que nunca fué requerido por persona alguna para que firmase como testigo de la entrega a don Antonio Vélez Alvarado de un documento de embargo de bienes inmuebles; que sabe firmar, pero que esa firma no es suya; que hay otro Juan Rosario en el mismo barrio, pero se llama Juán Rosario Rosario.

El demandado ofreció como única prueba la estipulación por la cual los abogados convinieron que si el demandado fuese llamado a declarar sostendría bajo juramento las alegaciones de la contestación y negaría la alegada promesa de devolver la finca al demandante.

El fundamento principal de la sentencia recurrida es que la evidencia presentada no ha establecido la existencia de hechos o motivos legales suficientes para justificar un decreto de nulidad de la subasta. No discutiremos esa cuestión, porque aún aceptando que en la subasta se cumpliera con todos los requisitos legales, siempre tendríamos que llegar a la ineludible conclusión de que la corte inferior erró al desestimar la demanda y al no dictar sentencia ordenando la devolución de la finca al demandante.

La prueba practicada demostró que la finca objeto de este litigio tiene un valor de quince mil dólares; y que fué adjudicada al demandado por la suma de sesenta y pico de dólares, importe de contribuciones que estaban pendientes de pago. El demandado es hijo de un primo hermano del demandante, conocía la finca y sabía que la misma pertenecía al demandante.

La corte inferior, después de expresar su pesar porque "la finca fuera vendida por una cantidad menor que su valor", llegó a la conclusión de que el demandante había sido

culpable de abandono "al no satisfacer el importe de las contribuciones y al no redimir la finca oportunamente", añadiendo: "No podemos explicarnos cómo el demandante dejó pasar el término de redención cuando era tan fácil consignar la cantidad y obtener en el Registro la redención de la finca."

La explicación de las causas o motivos que indujeron al demandante a dejar pasar el término de redención, surge claramente de la evidencia. Al enterarse el demandante y su esposa de que la finca había sido vendida y que el comprador en la subasta era su primo, el demandado, fueron a ver al demandado para cerciorarse de si éste tenía el propósito de quedarse con la finca por la insignificante suma de sesenta y pico de dólares en el caso de que dicha suma no le fuera devuelta dentro del término fijado por la ley para la redención de fincas vendidas por falta de pago de contribuciones. Les aseguró el demandado que él no pensaba quedarse con la finca y que estaba dispuesto a devolvérsela al demandante "en cualquier momento." Confiando en las protestas de amistad del demandado y en la promesa que éste le hiciera de devolverle la finca "en cualquier momento", el demandante, quien tenía fondos suficientes para redimir la finca, fué inducido a creer que el demandado le traspasaría el título de la finca, aun después de la expiración del término de redención. La conclusión a que llegó la corte inferior, de que el demandante había incurrido en negligencia al no redimir la finca a tiempo, es a nuestro juicio errónea, pues la evidencia demuestra que si el demandante no ejercitó a tiempo el derecho de redención fué por haber sido inducido a ello por las promesas del demandado de que le devolvería la finca en cualquier momento, mediante la devolución de la suma pagada por él en la subasta.

Sería a nuestro juicio altamente injusto y contrario a los más elementales principios de equidad permitir que el demandado, como resultado de sus actuaciones, se enriquezca

injustamente a expensas del demandante, obteniendo por una suma insignificante una finca de cerca de doscientas cuerdas valorada en no menos de quince mil dólares. Habiendo inducido al demandante a creer que él, el demandado, aceptaría el precio de la redención y le traspasaría el título de la finca aun después de haber expirado el término legal, el demandado está impedido (*estopped*) de alegar como defensa que el término de redención había expirado cuando el demandante le ofreció devolverle la cantidad pagada por él en la subasta.

Consideramos como aplicable a los hechos del presente caso la doctrina del fideicomiso constructivo (*constructive trust*) que sirvió de base a nuestra decisión en el de *Porrata v. Fajardo Sugar Co. of Puerto Rico*, 57 D.P.R. 628, 643. Cuando el demandado, como en el presente caso, ostenta el título sobre la finca, pero está obligado equitativamente a transmitirla al demandante por la razón de que se enriquecería injustamente si le permitiese retenerla como suya, de esos hechos surge un fideicomiso constructivo, impuesto como un remedio legal para impedir un enriquecimiento injusto. *Restatement of the Law—Restitution*, párr. 160, págs. 640 a 644. El remedio consiste en colocar a las partes en la misma posición en que se encontraban antes de que el demandado adquiriese la propiedad, obligando al demandado, como fiduciario, al cumplimiento específico del fideicomiso mediante la transferencia del título sobre la propiedad a favor del beneficiario, quien estará obligado a reintegrar a dicho fiduciario las sumas pagadas por éste por la adquisición del inmueble y por su conservación, con intereses al tipo legal hasta la fecha en que se efectúe el pago. Véase *Laing v. McKee*, 87 Am. Dec. 738.

Por las razones expuestas, *se revocará la sentencia recurrida y se dictará otra declarando con lugar la demanda y ordenando al demandado que entregue al demandante la posesión de la finca y le transfiera el título adquirido por*

*el demandado por virtud de la adjudicación que le hiciera el Colector de Rentas Internas de Manatí en la subasta celebrada el día 9 de enero de 1941, debiendo el demandante pagar al demandado las sumas pagadas por éste como precio de la subasta y por la conservación de la finca, más los intereses correspondientes hasta la fecha del pago. El demandado deberá rendir cuentas de y hacer efectivo al demandante el importe de los frutos, rentas y beneficios obtenidos por él durante el tiempo en que ha estado en posesión de la finca, más las costas de esta acción, incluyendo la suma de $300 como honorarios de abogado.*

El Juez Asociado Sr. Córdova no intervino.