HIPÓLITO LUPERENA, demandante y apelado, *v.* AUTORIDAD DE TRANSPORTE DE PUERTO RICO, demandada y apelante.

Número 10409.

*Sometido:* 6 de junio de 1951. *Resuelto:* 26 de junio de 1956.

*Elí Beléndez García* y *Hernán G. Pesquera,* abogados de la apelante; *Rafael Arjona Siaca,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del Tribunal.

El 25 de agosto de 1946 expiró el permiso provisional extendido por la Comisión de Servicio Público de Puerto Rico a un considerable número de porteadores públicos independientes—entre los que se encontraba el aquí demandante Hipólito Luperena—para prestar servicio de transportación de pasajeros en las mismas rutas en que lo prestaba la Autoridad de Transporte de Puerto Rico. Al no ser renovada dicha autorización provisional, los porteadores públicos afectados se vieron precisados a retirar sus vehículos[1] de las indicadas rutas, produciéndose—por el impacto súbito de dicho retiro—un breve período de anormalidad en ese servicio público.

Luperena era dueño de cuatro autobuses[2] que prestaban servicio en dichas rutas. Siguiendo indicaciones del entonces presidente de la Comisión de Servicio Público, Hon. Antonio R. Barceló, Jr., envió los mismos—al día siguiente de expirar el permiso provisional—al taller de la Autoridad de Transporte, a fin de que los examinaran, con miras a su posible adquisición por ésta. El Administrador General de la Autoridad, Sr. José G. Bloise, no tuvo conocimiento de la entrega de los vehículos hasta poco antes de partir para Estados Unidos y no fué hasta después de su regreso que el demandante logró verle en su oficina para tratar sobre la venta de los mismos. En esa ocasión, después de algún regateo, se pusieron de acuerdo en el precio, cerrando el negocio, haciendo el demandante entrega a Bloise de las licencias correspondientes, que endosó a nombre de la Autoridad, y ordenando el Administrador el pago del precio

---

[1] En la prueba se hace referencia a 140 vehículos.

[2] Uno de los autobuses tenía capacidad para 29 pasajeros, dos para 31 cada uno y otro para 33.

convenido, que le fué hecho. Aunque el Administrador sabía que los vehículos estaban en posesión de la Autoridad, desconocía si ésta había estado explotando los mismos, (³) y antes de la fecha en que se llevó a cabo la transacción no había mediado entendido de clase alguna entre él y Luperena. "En ningún momento hubo consentimiento del demandante"—declaró probado el tribunal sentenciador— "para que, sin haber comprado sus vehículos, la demandada los funcionara lucrándose de su funcionamiento en perjuicio del demandante, cuando todavía eran propiedad de éste"; y al comprarlos la demandada "no hubo pacto alguno por

---

(³) El testimonio del Sr. Bloise sobre ese extremo fué el siguiente:

"P.—Cuando Ud. ordenó que le pagaran las cuatro guaguas al Sr. Luperana, ¿sabía Ud. si la Autoridad de Transporte había estado funcionando esas guaguas?

"R.—No podría yo certificarlo porque para eso está el Jefe de Tránsito".

Otro extremo de su testimonio a ese efecto fué el siguiente:

"P.—¿Él entregó las cuatro guaguas a la Autoridad?

"R.—Sí, las entregó al taller.

"P.—¿Usted no tuvo conocimiento de eso?

"R.—No, el día que las llevó no habló conmigo siquiera.

"P.—¿Usted no sabe por orden de quién él las llevó, no fué por orden suya?

"R.—No señor.

"P.—¿Las entregó él?

"R.—Las llevó allí.

"P.—¿Usted recuerda la fecha en que él llevó las guaguas?

"R.—No señor.

"P.—¿Poco después usted embarcó para los Estados Unidos?

"R.—Sí señor.

"P.—¿Y usted regresó de los Estados Unidos y se encontró que las guaguas del Sr. Luperena estaban rotas?

"R.—No podría precisarle.

"P.—¿Que estaban metidas en el garaje?

"R.—Tampoco podría decirle.

"P.—¿Se encontró que las guaguas estaban inservibles?

"R.—Tampoco podría decirle.

"P.—¿QUE ESTABAN CIRCULANDO?

"R.—No podría decirle.

"P.—¿Se encontró que las guaguas estaban trabajando?

"R.—Tampoco podría decirle.

"P.—¿Usted no sabe?

"R.—Hay un jefe de transportación que lo sabe. Yo sé que estuvieron en la Autoridad cuando yo regresé.

medio del cual el demandante renunciara al producto neto de la operación lucrativa de los mismos por la demandada... ni para que se incluyera dicho producto en el precio de su compraventa".

Desde la fecha de su entrega hasta la fecha de su adquisición, la Autoridad utilizó los autobuses del demandante en la prestación de su propio servicio al público, y durante ese período, debido a la demanda de pasaje, los mismos iban continuamente ocupados a toda capacidad.

Con esos hechos, que estimó probados el tribunal a quo, dictó sentencia en contra de la demandada por el producto neto del funcionamiento de dichos vehículos una vez deducidos todos los gastos incidentales al mismo desde su entrega hasta la fecha de su adquisición por la Autoridad, $3,801, más intereses, costas y $300 para honorarios de abogado.

En apelación sostiene la demandada que el tribunal a quo erró: (1) al considerar probado el hecho de que en ningún momento hubo consentimiento del demandante para que la demandada funcionara los vehículos; (2) al concluir que de los hechos en este caso surgió un fideicomiso constructivo; (3) al concluir que la propiedad de los vehículos pasó a la demandada en el momento de pagar su precio y que mientras fueron operados con anterioridad a ese momento dichos vehículos eran todavía propiedad del demandante; (4) al concluir que el demandante no renunció al beneficio obtenido por la demandada a través del funcionamiento de los vehículos durante el período de 35 días que precedió a su adquisición; (5) al admitir en evidencia la prueba del demandante sobre gastos y beneficios que hubieren producido los vehículos, de acuerdo con su experiencia; (6) al concluir que los vehículos produjeron a la Autoridad la suma de $3,801 luego de deducidos los gastos de funcionamiento y dictar sentencia por dicha suma; y (7) al concluir que la Autoridad utilizó los vehículos del demandante diariamente durante el período de 26 de agosto hasta el 30 de septiembre.

■ Funda la apelante su primer señalamiento de error—considerar probado el hecho que el demandante no dió su consentimiento para que la demandada funcionara los vehículos—en .las alegaciones contenidas en el párrafo 4 de la demanda, al efecto de que el demandante entregó sus autobuses a la Autoridad "bajo el entendido de que la demandada entregaría por el uso de sus vehículos lo que los mismos produjeran, una vez descontados los gastos de su funcionamiento o una suma razonable de dinero por su uso diario".

Su argumento de que dichas alegaciones "desvirtúan totalmente la conclusión del juez de la corte inferior, ya que las mismas, no habiendo sido controvertidas por evidencia alguna durante el procedimiento, constituyen una admisión judicial", carece de fundamento legal, pues no sólo negó la demandada, en su contestación, dichas alegaciones, si que su propia prueba sobre ese extremo demostró que entre el demandante y el Administrador de la Autoridad no había mediado pacto o entendido alguno que autorizara el uso o funcionamiento por éste de los autobuses del primero. La ausencia de prueba específica de parte del demandante sobre la existencia del alegado entendido, no derrota su derecho— si lo tiene independientemente de la existencia del convenio —ni es impedimento para que obtenga, por virtud de la mecánica procesal de las vigentes Reglas de Enjuiciamiento Civil, el remedio que corresponda, de acuerdo con los hechos probados y la ley.

■ En su segundo señalamiento la apelante impugna el fundamento legal de la sentencia: la aplicación a este caso de la doctrina del fideicomiso constructivo. Como en su argumentación la apelante parte de hechos que estima debió haber considerado probados el tribunal sentenciador, y en señalamientos separados impugna las conclusiones de hecho y de derecho formulados por dicho tribunal, hemos de examinar primeramente los apuntamientos 3, 4 y 7 para regresar luego al segundo.

No cometió el tribunal a quo el tercer error señalado al concluir que la demandada no adquirió derecho de propiedad sobre los vehículos del demandante hasta que éste y el Administrador de la Autoridad se pusieron de acuerdo sobre el precio, y que mientras fueron operados por la demandada con anterioridad a dicho acto, los mismos eran propiedad del demandante. La prueba de ambas partes demostró que no fué hasta el 30 de septiembre de 1946 que quedó perfeccionada la venta de dichos vehículos ya que fué en la indicada fecha que el demandante se entrevistó y discutió la misma con el Administrador, y que convinieron un precio cierto. "Por el contrato de compraventa"—reza el art. 1334 del Código Civil, ed. 1930—"uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que le represente"; y el 1339 "La venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato y en el precio, aunque ni la una ni el otro se hayan entregado." No hay contrato sino cuando concurren los requisitos del consentimiento, objeto y causa—art. 1213—manifestándose el consentimiento "por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato"—art. 1214. Bajo los hechos de este caso, decidió correctamente el tribunal sentenciador que la demandada no adquirió derecho de propiedad sobre los vehículos del demandante hasta el 30 de septiembre, y que durante el período de 26 de agosto hasta esa fecha en que fueron operados por la demandada, pertenecían al demandante.

El cuarto error señalado, en tanto va dirigido a impugnar la conclusión *de hecho* de que el demandante no renunció a su reclamación contra la Autoridad, no fué cometido, aunque—como veremos al considerar el segundo señalamiento—su derecho no comprende los *beneficios* y sí *compensación por el uso* de los autobuses. La teoría de la apelante es que el pago de la suma convenida como precio

de los vehículos lo fué en satisfacción de cualquier otra reclamación bona fide que tuviera el demandante; y que su conducta "poco equitativa" al callar su intención de reclamar los beneficios de la operación de los vehículos es suficiente para que se le considere impedido a ello. De haber "reclamado a tiempo en lugar de callar", arguye, "la demanda hubiera incluído la reclamación en el precio, como en efecto entendió que había hecho". Aunque en una parte de su testimonio—única prueba de la demandada a ese efecto— el Administrador afirmó que lo pagado al demandante incluía cualquier otra reclamación que éste pudiera tener hasta ese momento contra la Autoridad, (⁴) el mismo no fué apreciado por el tribunal a quo como determinante de ese hecho. No estimamos errónea tal apreciación, pues en otra parte de su testimonio también afirmó el Administrador que desconocía—véase nota 3—si los vehículos del demandante habían o no sido utilizados por la Autoridad. No vemos cómo, desconociendo el Administrador el hecho básico en que podía fundarse la reclamación del demandante, podía el tribunal sentenciador dar paso a su afirmación de que "se estipuló bien claro que [el precio pagado por los autobuses] era el precio de todo lo que le debía la Autoridad", incluyendo su uso.

■■ Tampoco puede inferirse renuncia alguna del demandante al pago por el uso de sus vehículos del hecho de que, cuando discutió su venta con el Administrador, no le hiciera reclamación de pago por aquel concepto. En ausencia de pacto expreso en el sentido de que el precio convenido incluía el pago por su uso, dicho precio, conforme a nuestro

---

(⁴) El Administrador manifestó:

"El Sr. Luperena alegó varias cosas más pero cuando cerramos el precio se estipuló bien claro que era el precio de todo lo que le debía la Autoridad de Transporte.

"P.—¿Incluyendo el uso?

"R.—Absolutamente; de lo contrario se hubiera llevado las guaguas y hubiéramos tenido que pagarle el uso".

derecho, lo fué por el valor intrínseco de los vehículos en el estado en que los mismos se hallaban al perfeccionarse el contrato de compraventa el 30 de septiembre. Art. 1357 Código Civil, ed. 1930. Su uso previo por la Autoridad, no convenido, no fué compensado con dicho pago.

En cuanto al séptimo señalamiento baste indicar, para desestimarlo, que la conclusión del tribunal a quo en el sentido de que la Autoridad utilizó los vehículos del demandante diariamente desde el 26 de agosto hasta el 30 de septiembre, encuentra apoyo en la prueba del demandante, que no fué contradicha por la prueba de la demandada.

Regresemos ahora al segundo señalamiento. El tribunal a quo fundó su sentencia en la siguiente conclusión de derecho sostenida por citas de nuestras decisiones en *McCormick* v. *González*, 49 D.P.R. 473; *Fernández* v. *Laloma*, 56 D.P.R. 367; *Porrata* v. *Fajardo Sugar Co. of P. R.*, 57 D.P.R. 628, 643; *Ruiz* v. *Ruiz*, 61 D.P.R. 823; *Cardona* v. *Corte*, 62 D.P.R. 61, 92; *Compañía Popular* v. *Corte*, 63 D.P.R. 121, 127 y *Freyre* v. *Blasini*, 68 D.P.R. 211, 217: "La obligación de esa entrega [del producto neto de la operación de los vehículos] surge clara de la relación establecida entre las partes. La demandada no tenía derecho alguno a explotar en su servicio la propiedad del demandante, con perjuicio de éste y en su propio beneficio. Al operarla como lo hizo, se constituyó tácitamente en fideicomisaria de dicha propiedad para funcionarla rindiendo cuenta a su dueño de lo producido por su uso lucrativo. Sostener lo contrario sería favorecer el enriquecimiento injusto de la demandada a expensas del demandante. Así debió haberlo reconocido la demandada evitando la presente acción".

La apelante arguye, en apoyo de este señalamiento, que los elementos de un fideicomiso constructivo están totalmente ausentes en este caso, ya que (1) "La entrega de los vehículos se hizo sin que mediara engaño, fraude o artificio alguno por parte de la Autoridad", y (2) "el uso por la

Autoridad fué consentido por el demandante, quien en ningún momento objetó a este uso de los vehículos ni intentó recuperar su posesión".

Convenimos con la apelante en que bajo los hechos de este caso no puede declararse existente un fideicomiso constructivo por virtud del cual venga obligada la demandada, para evitar un enriquecimiento injusto, a restituir al demandante los beneficios netos obtenidos del funcionamiento de sus vehículos. Es regla establecida en materia de fideicomisos que no se permite su creación expresa, ni se produce su creación tácita, para un fin contrario a la ley o para circunvalar la política pública. American Law Institute, *Restatement of Trusts*, vol. 1, secs. 60 y 62; vol. 2, sec. 444; 54 Am. Jur., *Trusts*, sec. 192. El demandante—por haber expirado su autorización provisional para prestar servicio de transportación en las mismas rutas en que lo prestaba la Autoridad de Transporte—no podía, dentro de ley, operar directamente sus vehículos como empresa suya y para su beneficio, dentro de dichas rutas, y, en consecuencia, tampoco podía hacerlo indirectamente a través de la demandada; y ésta no podía constituirse—ni por convenio expreso ni sin él —en fideicomisaria, para beneficio del demandante, de una empresa que éste, por sí, no podía ya legalmente explotar.

No obstante lo anterior, la reclamación del demandante no queda derrotada. Este caso no gira alrededor de la doctrina del fideicomiso constructivo. Aunque hemos "intercalado" dicha doctrina en nuestro derecho civil—*Cardona* v. *Corte*, 62 D.P.R. 61—con el fin de evitar el enriquecimiento injusto, [5] su aplicación debe circunscribirse, en todo caso, a situaciones no previstas por nuestro derecho positivo; reconociendo, desde luego, que tanto esa doctrina como principios generales de derecho—aparte de preceptos específicos

---

[5] En adición a los casos citados por el tribunal sentenciador, véanse: *García* v. *Rexach*, 65 D.P.R. 526; *Ramírez* v. *Ramírez*, 65 D.P.R. 544; *Santiago* v. *Rodríguez*, 72 D.P.R. 266 y *Sucn. Marrero* v. *Santiago*, 74 D.P.R. 816.

de nuestro Código Civil(⁶)—consagran por igual "el principio de justicia eterna a virtud del cual a nadie le es permitido enriquecerse injustamente a costa de otro".(⁷) *Compañía Popular* v. *Corte*, 63 D.P.R. 121. La existencia de disposiciones legales aquí aplicables hace innecesario dar ulterior consideración a dicha doctrina.

No podemos prescindir de caracterizar, para determinar el derecho del demandante—el cual no depende de la existencia o no de beneficios como resultado del funcionamiento por la demandada de sus vehículos, pues igual derecho tendría si la Autoridad hubiera sufrido pérdidas—la figura jurídica que la situación de hechos en este caso perfila. La función doctrinal de nuestra jurisprudencia exige precisar la fuente originaria de este derecho. La demandada viene obligada a pagar al demandante una suma razonable por el uso diario de sus autobuses—como lo alegó y pidió en su demanda en forma alternativa a la de restitución de beneficios—siendo esa obligación una de naturaleza cuasicontractual, de tipo innominado,(⁸) de las que nuestro Código Civil define genéricamente en su art. 1787,(⁹) sur-

---

(⁶)1 Castán, Derecho Civil, Común y Foral, 7ma. ed., pág. 716; Núñez Lagos, *El Enriquecimiento sin Causa en el Derecho Español*, pág. 10 *et seq.;* García Morencos, *Enriquecimiento Injusto*, en Diccionario de Derecho Privado, tomo 1, págs. 1794–1795; Guaroa Velázquez, *El Derecho Puertorriqueño de las Obligaciones durante la primera mitad del Siglo XX*, 23 Revista Jurídica de la Universidad de Puerto Rico, pág. 301.

(⁷)1 Castán, Derecho Civil Español, Común y Foral, 7ma. ed., pág. 713 et seq.; Puig Peña, Tratado de Derecho Civil Español, Tomo IV, Vol. II, pág. 559 et seq.; Núñez Lagos, El Enriquecimiento sin Causa en el Derecho Español (Madrid 1934); Díaz Pairó, Introducción Al Derecho de Obligaciones, tomo 2, pág. 13 et seq.; García Morencos, Enriquecimiento Injusto, en Diccionario de Derecho Privado, tomo 1, pág. 1793 et seq.; 3 Colin y Capitant, Derecho Civil (Trad. 2da. ed. española) pág. 923 et seq.; Allen, *Law in the Making (Unjust Enrichment)* págs. 318 y 329; Dawson, *Unjust Enrichment* (1951).

(⁸)En el Derecho español se ha admitido la existencia de cuasicontratos innominados. 3 Castán, Derecho Civil Común y Foral, 6ta. ed. pág. 413. Sentencias del Tribunal Supremo de España de 8 de enero de 1909 y 21 de junio de 1945.

(⁹)Artículo 1787.—"Son cuasicontratos los hechos lícitos y puramente voluntarios, de los que resulta obligado su autor para con un tercero y a veces una obligación recíproca entre los interesados."

gente de su voluntaria actuación al operar dichos vehículos, la cual aun cuando no convenida, no constituye hecho ilícito en sí, pues no cabe imputar ilicitud cuando no media—como no media aquí—la fraudulenta apropiación por la demandada de los vehículos del demandante, que éste puso en su posesión. En cuanto a su uso, tampoco cabe imputar ilicitud, pues aun cuando la prueba revela que no hubo autorización previa del demandante para ello, la misma justifica que se atribuya a éste —por su silencio[10] ante el hecho, por él conocido, de la continuidad del uso de dichos vehículos por la demandada en la prestación de su servicio público durante la emergencia—haber dado su asentimiento, no constitutivo en sí de contrato, para que así se utilizaran. En tales circunstancias, no habiendo mediado acuerdo previo sobre compensación, tan creador de una obligación de origen legal cuasicontractual resulta el uso por la demandada de los autobuses del demandante, como creador de una obligación legal de origen contractual resultaría el mismo si dicho uso y compensación hubieran sido previamente convenidos.

La figura jurídica del cuasicontrato[11] se considera por la crítica moderna "desprovista de realidad científica".[12] El Derecho español, sin embargo, la acepta, aunque "abandonada casi por la ciencia jurídica actual" según el Tribunal Supremo de España—sentencia de 21 de junio de 1945— "por un imperativo legal": el art. 1887 del Código Civil español, equivalente al 1787 nuestro. Y apartándose dicho Tribunal de la teoría que fundaba el cuasicontrato en el consentimiento presunto—sentencia de 12 de junio de 1889 —afirma, en otra de 21 de diciembre de 1945, que "es el

[10] Clemente de Diego, El Silencio en el Derecho (1925); 1 Castán, ob. cit. pág. 679.

[11] 4 Puig Peña (Vol. 2) Tratado de Derecho Civil Español, pág. 537 et seq.; 2 Clemente de Diego, Instituciones de Derecho Civil Español, pág. 322 et seq.; 3 Valverde, Tratado de Derecho Civil Español, 4ta. ed., pág. 764 et seq.; 4 Sánchez Román, Derecho Civil, pág. 992 et seq.; 12 Manresa, Comentarios al Código Civil, 5ta. ed., pág. 576 et seq.; 2 Díaz Pairó, Introducción al Derecho de Obligaciones, pág. 4 et seq.

[12] 4 Castán, Derecho Civil, Común y Foral, 7ma. ed. pág. 757.

enriquecimiento injusto el que late en la entraña de todo cuasicontrato". (13)

Por el quinto señalamiento se queja la apelante de que el tribunal sentenciador admitió en evidencia la prueba del demandante sobre los beneficios que durante el período a que se contrae la reclamación, debieron producir los vehículos, de acuerdo con su experiencia, después de descontados los gastos de operación.

El demandante y su testigo Mateo Hernández declararon en detalle sobre los costos de operación de los vehículos, incluyendo todos los factores a considerar en ese negocio, según su experiencia, y estimaron los beneficios que el funcionamiento diario de los mismos debió producir a la Autoridad durante el referido período.

Aparte de que la demandada repreguntó extensamente sobre esos extremos, ofreció, y el tribunal admitió en evidencia, las hojas preparadas por empleados suyos—colectores—conteniendo sus informes sobre la transportación de pasajeros llevada a cabo en los vehículos del demandante durante el período de referencia; pero luego de ofrecidas y *admitidas*, las retiró, descansando su caso en la declaración de su Administrador, que fué su único testigo. No puede quejarse ahora de su propia actuación, que lleva en sí la presunción de que esa prueba le hubiera resultado adversa.

El sexto señalamiento va dirigido a impugnar el monto de la sentencia—$3,801.00—dictada en su contra. En vista de nuestra conclusión de que el derecho del demandante no se extiende a los beneficios netos producidos por el funcionamiento de sus vehículos, y sí a una suma razonable por su uso, es innecesario considerar. este apuntamiento de error.

---

(13) Para igual criterio en el derecho inglés, véase Allen, *Law in the Making*, pág. 329.

Este criterio, aunque combatido, encuentra expresión en la doctrina francesa. Planiol considera que todo cuasicontrato está fundado en el enriquecimiento sin causa, expresando "cuando se busca el rasgo común que reune todos los hechos llamados cuasicontratos, aparece la obligación cuasicontractual como proviniendo siempre de un enriquecimiento obtenido sin causa a expensas de otro". 4 Castán, ob. cit. pág. 758.

En su lugar resolvemos, sin embargo, reducir el monto de dicha sentencia—a base de la prueba en autos—a la suma de $2,800, estimando justificada una compensación de $20 diarios por el uso de cada uno de los ómnibus del demandante durante los 35 días que comprende su reclamación.

*La sentencia será modificada en el sentido indicado, y así modificada, será confirmada.*